UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORA SCOTT, KAYETTE SMITH, and SHANNON ROBINSON, individually and on behalf of all those similarly situated,

Plaintiffs,

v.

CHARTER COUNTY OF WAYNE,

Defendant.

Case No.
Hon.

**[CLASS ACTION]**

**CLASS ACTION AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

---

## INTRODUCTION

1. This case arises from Defendant CHARTER COUNTY OF WAYNE's ("Defendant" or "Wayne County") systematic and widespread underpayment of overtime wages for hundreds of Wayne County employees, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 – 219.

2. For years, Defendant has failed to include all eligible forms of remuneration in the "regular rate" from which overtime wages are to be calculated in accordance with the FLSA, 29 U.S.C. § 207(a) & (e). These underpaid sums include shift premiums, weekend premiums, employer-paid premiums for assignable life insurance plans, non-discretionary bonuses, and other sums.

3. These regular rate violations, as well as other types of FLSA violations have deprived Defendant's employees of wages earned and owed for working more than 40 hours per workweek, amounting to hundreds or thousands of dollars in damages for many people.

4. To remedy these violations, Named Plaintiffs Cora Scott, Kayette Smith, and Shannon Robinson (collectively "Plaintiffs" or "Named Plaintiffs") bring this action on their own behalf as well as on behalf of putative FLSA collectives of similarly situated County employees and the putative Rule 23 Class.

**PARTIES**

5. Plaintiff Cora Scott is a former employee of Defendant who worked at the Juvenile Detention Facility (JDF) during the last three years, sometimes more than 40 hours in a week. She resides and, at all relevant times, resided within this District. While employed by Defendant, Scott was a member of the American Federation of State, County and Municipal Employees (AFSCME) Non-Supervisors Local 409. Her consent to join is attached to this Complaint. **Exhibit A.**

6. Plaintiff Kayette Smith is a former employee of Defendant who worked at the JDF during the last three years, sometimes more than 40 hours in a week. She resides and, at all relevant times, resided within this District. While employed

by Defendant, Smith also was a member of the AFSCME Non-Supervisors Local 409. Her consent to join is attached to this Complaint. **Exh. A.**

7. Plaintiff Shannon Robinson is a former employee of Defendant who worked as a registered nurse at the JDF during the last three years, sometimes more than 40 hours in a week. She resides and, at all relevant times, resided within this District. While employed by Defendant, Robinson was a member of the Government Administrators Association (GAA) Affiliated Chapter Wayne County Professional Nurses Council (WCPNC) – Unit 1. Her consent to join is attached to this Complaint. **Exh. A.**

8. Defendant Charter County of Wayne is the most populous county in the State of Michigan and is located in this District, with its county seat/principal place of business in the City of Detroit.

**JURISDICTION AND VENUE**

9. The Court has general *in personem* jurisdiction over the Defendant because it is located and conducts business within the Eastern District of Michigan. In the alternative, the Court has specific jurisdiction over this dispute because the transactions and occurrences giving rise to it occurred within and resulted from Defendant's business activities within and directed towards the Eastern District of Michigan.

10. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' FLSA claims arise from federal law.

11. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because they are so closely related to Plaintiffs' federal FLSA claims that they are part of the same case or controversy.

12. Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

## FACTUAL ALLEGATIONS

13. Plaintiffs repeat and re-allege the previous numbered paragraphs as if fully restated herein.

14. In or around June or July 2024, Defendant changed its payroll provider from PeopleSoft to Oracle. This change appears to have contributed to some of the overtime pay violations alleged herein.

15. Defendant has been on actual notice of these problems since shortly after the payroll transition because of questions and complaints from employees.

16. Despite having actual notice of the ongoing underpayment of wages, Defendant has failed to fully correct the wage shortages. Where Defendant has made prospective corrections, it has failed to correct the violations retrospectively.

17. Defendant is party to a collective bargaining agreement (CBA) with each union that covers their affected employees. This litigation relates to Defendant's current and former employees covered by the following CBAs (the "Relevant Unions" or "Relevant CBAs"):

a. American Federation of State, County and Municipal Employees (AFSCME) Non-Supervisors - Locals 25, 101, 409, and 1659 (**Exhibit B**);

b. AFSCME Supervisors – Locals 1862, 2057, and 2926 (**Exhibit C**);

c. Government Administrators Association (GAA) Affiliated Chapter Wayne County Professional Nurses Council (WCPNC) – Unit 1 (**Exhibit D**);

d. Government Administrators Association (GAA) Affiliated Chapter Wayne County Professional Nurses Council (WCPNC) – Unit 2 (**Exhibit E**);

e. Michigan Building and Construction Trades Council (MBCTC) (**Exhibit F**); and

f. International Union of Operating Engineers (IUOE) Local 324 (**Exhibit G**)[1].

---

[1] There is no current CBA posted on the Wayne County website for the IUOE Local 324. The attached **Exhibit G** is the most recent CBA for the IUOE, term ending

## FLSA COLLECTIVE ALLEGATIONS

18. Plaintiffs repeat and re-allege the previous numbered paragraphs as if fully restated herein.

19. The relevant time period for the FLSA counts begins 3 years before the filing of this Complaint ("FLSA Limitations Period").

20. Named Plaintiffs have executed their FLSA Consent to Join forms, attached as **Exhibit A**.

21. As further explained below, the members of each Collective are similarly situated to Named Plaintiffs and the other members of that Collective.

22. Defendant is an employer as defined in the FLSA, 29 U.S.C. § 203(d).

23. Named Plaintiffs and those similarly situated are employees as defined in the FLSA, 29 U.S.C. § 203(e)(1) & (e)(2)(C).

24. Defendant is subject to the FLSA on an enterprise basis. *See* 29 U.S.C. § 203(r)(1), (r)(2)(C), (s)(1)(C), and (x).

25. According to the FLSA, 29 U.S.C. § 207(a)(1), employers must pay overtime compensation at "a rate not less than one and one-half times the regular rate at which [an employee] is employed."

---

September 30, 2025, which covers approximately the first two years of the three-year FLSA Limitations Period pled herein.

26. "This extra [overtime] compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid." 29 C.F.R. § 778.315.

27. The FLSA specifies that the "regular rate" for purposes of calculating overtime premiums is not simply the employee's base hourly wage. It is a calculated figure that "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee" except for payments specifically excluded by 29 U.S.C. § 207(e).

28. Where, as in this case, the employer fails to pay the correct straight-time hourly rate per the CBA and calculates overtime compensation based upon that incorrect regular rate, the employer has also violated the FLSA as to the resulting shortfall in the overtime rate. 29 C.F.R. § 778.315; *see also* 29 U.S.C. § 207(a)(1), (e); 29 C.F.R. §§ 778.108, 778.110(a), 778.317.

29. Counts 1 through 4 are based on the FLSA regular rate theory and assert violations of the FLSA arising from Defendant's failure to properly calculate the regular rate and resulting overtime compensation:

a. Count 1 – omission of the employer's premium contribution to a non-bona fide life and accidental death and dismemberment (AD&D) insurance plan;

b. Count 2 – omission of shift, weekend, and hourly premiums and standby/on-call payments from the regular rate;

c. Count 3 – calculation of overtime compensation using stale base wage rates that did not reflect contractually scheduled wage increases; and

d. Count 4 – omission of nondiscretionary bonus payments from the regular rate.

30. An affected employee of Defendant may have suffered some or all of these miscalculations of the regular rate for determining overtime wages.

31. Defendant's failure to fully correct or account for the wage shortages, both retrospectively and prospectively, despite being on actual notice of the wide-spread problems, supports a finding of willfulness, such that a 3-year statute of limitations under the FLSA is appropriate. 29 U.S.C. § 255(a).

32. Defendant's failure to fully correct or account for the wage shortages, both retrospectively and prospectively, despite being on actual notice of the wide-spread problems, demonstrates a lack of good faith such that Defendant should not be excused from paying liquidated damages under FLSA. *See* 29 U.S.C. §§ 216(b) & 260.

33. Defendant maintains detailed electronic records of its employees' hours worked and pay received as statutorily required by FLSA, 29 U.S.C. § 211(c); therefore, Collective membership should be readily determinable.

34. Some of Defendant's wage underpayments and overtime violations appear to be due, at least in part, to paying a "stale rate" (*i.e.*, failing to timely update payroll software to reflect the contractually scheduled increases in base wages, shift premiums, weekend premiums, location incentives, etc.).

35. Upon information and belief, Defendant pays all employees by using a single payroll platform to process payroll out of a single department and division, The Wayne County Department of Personnel/Human Resources, Administration Division. According to the County website, the Administration Division performs the following duties: Responsible for employee records, HRIS[2] upkeep and timekeeping functions. Applies wage and salary provisions of collective bargaining agreements; records personnel transactions; and assists other departments with personnel matters.[3]

36. As such, it is highly likely that other collectives or classes/subclasses of Defendant's employees are also being underpaid *en masse*. For example, *Haston, et al., v. Wayne County, et al.*, No. 2:26-cv-10419-LVP-DRG (E.D.

---

[2] Human Resource Information Systems.

[3] https://www.waynecountymi.gov/Government/Departments/PersonnelHuman-Resources (last accessed Aug 26, 2026).

Mich.) filed Feb. 6, 2026, alleges several similar widespread payroll errors resulting in FLSA overtime violations and underpayment of various premiums and benefits contractually and statutorily owed to Wayne County Sheriff's Office employees.[4]

37. Plaintiffs will seek further details and documents in discovery, relating specifically to other Locals or job classifications under the Relevant CBAs included here. Plaintiffs reserve the right to amend this complaint and the Collective definitions pled herein to reflect additional pay violations, should any surface through the discovery process.

## CLASS ALLEGATIONS

38. Plaintiffs repeat and re-allege the previous numbered paragraphs as if fully restated herein.

39. Count 5 (breach of contract) is brought on behalf of Named Plaintiffs and all members of the Wayne County Contract Class ("Class"), defined as follows:

> All current and former employees of Defendant who, at any time during the six years preceding the filing of this action, were employed subject to any of the Relevant CBAs identified herein.

40. Named Plaintiffs seek to certify the Class under Rule 23(b)(3) seeking monetary relief.

---

[4] Note that the Sheriff's Office employees are not part of this case or of the Class or Collectives pled here.

41. Named Plaintiffs are members of the Class they seek to represent.

42. The Class is easily ascertainable: putative Class members are known to Defendant and can be readily identified through Defendant's personnel records.

43. Count 5 of this litigation can be properly maintained as a class action. The putative Class satisfies all the requirements of Rule 23(b)(3) for maintaining a class action.

44. Numerosity. The putative Class is so numerous that individual joinder of all members is impracticable. It is reasonable to estimate that hundreds of individuals meet the Class definition.

45. Commonality. There are questions of law and fact common to the Class, including but not limited to the following:

   a. Whether Defendant was contractually obligated to calculate and pay compensation in accordance with the wage rates, premiums, differentials, and other compensation provisions of the Relevant CBAs;

   b. Whether Defendant administered payroll through a centralized system using common payroll policies, practices, and procedures;

   c. Whether Defendant failed to timely implement contractually required wage increases, premiums, or other compensation provisions in its payroll system;

d. Whether Defendant's payroll practices resulted in the systematic underpayment of compensation required by the Relevant CBAs;

e. Whether Defendant's failure to pay compensation in accordance with the Relevant CBAs constituted a breach of contract;

f. Whether Defendant's payroll, timekeeping, and personnel records provide common evidence of the alleged breaches and resulting underpayments; and

g. Whether Plaintiffs and the putative Class are entitled to recover for Defendant's breaches of contract;

h. The appropriate methods for calculating compensation contractually due but unpaid, and the availability of interest and other monetary and non-monetary relief; and

i. The nature and measure of damages for Plaintiffs and the putative Class members and interest thereon.

46. Further, proceeding as a Class will generate common answers to these common questions based on common evidence and facilitate unitary resolution.

47. <u>Typicality</u>. Plaintiffs' claims are typical of the claims of the Class in that Named Plaintiffs' employment was governed by CBAs with Defendant, their compensation was administered through Defendant's centralized payroll

system, and they seek the same type of damages and other relief on the same theories and legal grounds as the Class they seek to represent. Plaintiffs' claims and the claims of the Class arise from the same practices by Defendant. Plaintiffs are not known to be subject to any unique defense that is likely to become a major focus of this litigation.

48. Adequacy of Representation. Named Plaintiffs will fairly and adequately represent and protect the interests of the Class. No known conflicts of interest exist between Plaintiffs and Class members. Plaintiffs' attorneys are experienced in litigating wage and hour class actions. No known conflicts of interest exist between counsel and Class members.

49. Predominance of Common Issues. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

50. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the allegations herein. Class action treatment will permit many similarly situated persons to prosecute and resolve their common claims in a single forum simultaneously, efficiently, and without duplicating effort and expense in numerous individual actions. Class treatment will promote judicial economy and finality for all parties. Furthermore, the

amounts at stake for many members of the Class, while substantial, may not be sufficient to enable them to maintain separate suits against Defendant.

51. Because Class members' compensation is subject to Defendant's systemic pay practices administered through a single payroll platform by the Wayne County Department of Personnel/Human Resources, no Class member has a singularly compelling interest in individually prosecuting separate actions.

52. To counsel's knowledge, no litigation concerning this controversy has been begun by Class members to date.

53. Concentrating litigation of the Class members' claims in this single forum will promote judicial economy through unitary adjudication.

54. Plaintiffs are not presently aware of any difficulties likely to render Count 5 unmanageable as a class action. To the extent appropriate based on the evidence developed in discovery, the Court may certify subclasses pursuant to Fed. R. Civ. P. 23(c)(5).

**COUNT 1 – FLSA OVERTIME:**
**ASSIGNMENT OF BENEFITS (AOB) REGULAR-RATE VIOLATIONS**
***(On Behalf of Plaintiffs Scott, Smith, and Robinson and the AOB Collective)***

55. Plaintiffs repeat and re-allege the previous numbered paragraphs as if fully restated herein.

56. This Count for unpaid overtime in violation of the FLSA is brought by Plaintiffs on their own behalf and on behalf of the putative Assignment of Benefits ("AOB") Collective, defined as follows:

> All full-time, non-exempt current and former employees of Defendant who, during the three years preceding the filing of this action, had employer-paid Life and/or AD&D insurance coverage under MetLife Group Policy No. 262340-1-G and worked more than forty hours in at least one workweek.

57. The relevant MetLife Certificate specifies on its cover page that it applies to the following individuals, who are all subject to a Relevant CBA:

> All Full-Time employees working in the U.S. and on U.S. payroll, excluding temporary, leased or seasonal employees as follows:
>
> Class 5: AFSCME Non-Supervisory, AFSCME Supervisory, Building Trades, AFSCME Non-Supervisory Probate Court 1659, GAA Nurses I and II and IUOE Local 324, excluding Airport Authority.

**Exhibit H**, cover page.

58. Defendant purchases basic MetLife coverage for full-time, non-exempt employees working in the U.S. on U.S. payroll who are subject to one of the six Relevant CBAs. This insurance is part of their contractually guaranteed compensation and benefits package.

59. At orientation, Defendant distributes MetLife enrollment forms to new hires and collects the completed forms to ensure eligible employees are enrolled in the basic MetLife coverage provided for in the six Relevant CBAs.

60. Defendant pays periodic premiums on behalf of the employees enrolled in the MetLife plan.

61. Excluded from the FLSA "regular rate" are "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees." 29 U.S.C. § 207(e)(4).

62. The operative conditions to qualify for this exclusion are therefore:

   a. the contribution must be irrevocably made;

   b. it must be made to a trustee or third person; and

   c. it must be made pursuant to a "bona fide plan" for providing the enumerated categories of benefits.

63. The failure of any condition listed in 29 U.S.C. § 207(e)(4) means the exclusion does not apply, and the employer's premium contributions are remuneration that must be included in the regular rate when calculating overtime premiums.

64. Department of Labor regulations define "bona fide plan" in 29 C.F.R. § 778.215(a)(5) as follows: "(a) In order for a plan or fund or program to be

considered 'bona fide' within the meaning of section 7(e)(4) of the [FLSA], the following conditions must be met: … (5) The plan must not give an employee the right to assign his benefits under the plan nor the option to receive any part of the employer's contributions in cash instead of the benefits under the plan."

65. Defendant's MetLife Group Policy Number 262340-1-G, Certificate #4, triggers this issue directly.

66. The MetLife Certificate states under "Assignment": "You may assign Your Life Insurance and Accidental Death and Dismemberment Insurance rights and benefits under the Group Policy as a gift or as a viatical assignment as described below." **Exh**. **H**, MetLife Certificate, page 79.

67. Because the MetLife Plan benefits are assignable, it is not a "bona fide plan" under 29 C.F.R. § 778.215(a)(5). Therefore, employer-paid premiums for the MetLife plan must be apportioned across hours worked and included in the regular rate for calculating overtime wages. 29 U.S.C. § 207(e)(4).

68. The procedure for such apportionment, which may be accomplished retroactively, is set forth in 29 C.F.R. § 778.214(c).

69. Defendant appears to have been calculating overtime compensation without including the value of the MetLife premiums, in violation of the FLSA.

70. Defendant's employee pay statements generally reflect overtime compensation calculated at one and one-half times an employee's bare base hourly rate. The pay statements do not reflect incorporation of the employer-paid Life/AD&D premiums into the overtime rate, nor do they identify any separate overtime adjustment attributable to those premiums.

71. Whether Defendant made any separate adjustment not identifiable from the face of the pay statements, and the manner in which Defendant configured its payroll system to treat those premiums for regular-rate purposes, if at all, cannot presently be determined without discovery.

72. This practice is uniform across all employees enrolled in the MetLife Plan, including Named Plaintiffs, such that those full-time employees falling within the AOB Collective are similarly situated to Plaintiffs.

73. Plaintiffs and AOB Collective members are entitled to unpaid overtime premiums, calculated to include the apportioned value of employer-paid MetLife Plan premiums, plus an equal amount in liquidated damages, as well as costs and reasonable attorney fees per 29 U.S.C. § 216(b).

**COUNT 2 – FLSA OVERTIME:**
**SHIFT, WEEKEND & HOURLY PREMIUMS & ON-CALL PAY REGULAR-RATE VIOLATIONS**
***(On Behalf of Plaintiffs Scott, Smith, Robinson, and the Premium Collective)***

74. Plaintiffs repeat and re-allege the previous numbered paragraphs as if fully restated herein.

75. This Count for unpaid overtime in violation of the FLSA is brought by Plaintiffs on their own behalf and on behalf of the putative Premium Collective, defined as follows:

> All current and former non-exempt employees of Defendant covered by one of the Relevant CBAs who, during the three years preceding the filing of this action, qualified for a shift, weekend, or hourly premium or for standby/on-call pay in at least one workweek in which they worked more than 40 hours.

76. Each of the Relevant CBAs for this Count guarantees shift premiums to employees who work second or third shift during their regularly scheduled workweek assignment, for example:

a. <u>AFSCME Non-Supervisory & AFSCME Supervisory</u>: "Employees covered by this Agreement shall be paid ninety ($.90) cents per hour in addition to the basic hourly rate, for all work performed during a regularly assigned second shift and one-dollar and five cents ($1.05) per hour, in addition to the basic hourly rate for all work performed during a regularly assigned third shift." The dollar amount of the shift premiums remains constant throughout the term of the CBA, despite scheduled yearly base-wage increases. **Exh. B**, § 21.02, p. 36[5]; and §

[5] Page numbers refer to the native page numbers printed on the exhibits.

34.02(A)-(D), pp. 80-81; **Exh. C**, § 21.02, p. 36; and Art. 34, § 34.02(A)-(D), pp. 80-81.

b. GAA Nurses I & GAA Nurses II: an additional 8% of the basic hourly rate for all work performed on second or third shift. The percentage formula remains constant throughout the term of the CBA, although the value of the premium will increase with scheduled yearly base-wage increases. **Exh. D**, Nurses I CBA, § 21.02, p. 26; and *see* Art. 35, § 35.01(A)-(D), p. 60. **Exh. E**, Nurses II CBA, § 21.02, p. 26; and *see* § 35.01(A)-(D), pp. 58-59.

c. MBCTC: a shift differential of $1.00/hour for all hours worked on a regular afternoon or night shift, of which four or more hours fall between 6:00 p.m. and 6:00 a.m. **Exh. F**, § 19.05.

d. IUOE Local 324: an additional $1.00/hour for the regular afternoon shift, and an additional $1.10/hour for the midnight shift. Employees who are assigned Swing Shift duties are to be paid a shift differential of $1.00/hour for all hours worked. **Exh. G**, §§ 27.11 & 27.15.

77. Each of the Relevant CBAs for this Count also guarantees premiums to employees who work on Saturday or Sunday ("weekend premiums"), for example:

a. AFSCME Non-Supervisory & AFSCME Supervisory: "Employees covered by this Agreement shall be paid ninety ($.90) cents per hour, in addition to the basic hourly rate, for all work performed on a Saturday during their regularly scheduled workweek and one-dollar and five cents ($1.05) per hour in addition to the basic hourly rate, for all work performed on a Sunday during their regularly scheduled workweek." The dollar amount of the weekend premiums remains constant throughout the term of the CBA, despite scheduled yearly base-wage increases. **Exh. B**, § 21.03, p. 36; and *see* § 34.02(A)-(D), pp. 80-81; **Exh. C**, § 21.03, p. 36.

b. GAA Nurses I & GAA Nurses II: an additional 5% of the basic hourly rate for all work performed on a Saturday or Sunday during their scheduled workweek. The percentage formula remains constant throughout the term of the CBA, although the value of the premium will increase with scheduled yearly base-wage increases. **Exh. D**, Nurses I CBA, § 21.03, p. 26; and *see* § 35.01(A)-(D), pp. 59-60. **Exh. E**, Nurses II CBA, Art. 21, § 21.03, p. 26; and *see* Art. 35, § 35.01(A)-(D), pp. 58-59.

c. MBCTC: an additional $0.85/hour for all hours worked on a Saturday or Sunday. **Exh. F**, § 19.07.

d. IUOE Local 324: an additional $0.85/hour for work on a Saturday, and an additional $0.95/hour for work on a Sunday. **Exh. G**, §§ 27.13 & 27.14.

78. Other hourly premiums in the Relevant CBAs apply to shifts in which the covered employees undertake particular tasks or use particular equipment, for example[6]:

a. Section 34.09 in each of the AFSCME CBAs include hourly premiums for snow and ice assignments **Exh. B & C**;

b. the AFSCME Non-Supervisory CBA also includes in Section 34.09 hourly premiums for maintenance mechanics, heavy equipment operators, electricians, storekeepers, painters, and those operating a pesticide sprayer, **Exh. B**;

c. Section 23.04 of the GAA Unit 1CBA includes a charge pay premium of $1.25/hour for each hour a covered employee is assigned to be "in charge," **Exh. D**;

d. Section 23.04 of the GAA Unit 2 CBA includes a charge pay premium of $0.75/hour for each hour a covered employee is assigned to be "in charge," **Exh. E**; and

[6] This list may not be exhaustive. Plaintiffs reserve the right to amend this list as may be appropriate.

e. Memorandum of Agreement 4 of the IUOE CBA provides for a wage rate differential of $1.75/hour for refrigeration Equipment Mechanic or Operating Engineer job titles. **Exh. G**, MOA 4.

79. By contract, these shift, weekend, and hourly premiums are part of the straight-time pay for the hours of work to which they apply. They are not extra compensation for working over eight hours a day or in excess of the maximum workweek or normal working hours under 29 U.S.C. § 207(a). As such, the exception in § 207(e)(5) does not apply.

80. These premiums are less than one and one-half times the rate established for like work performed in non-overtime hours on other days. For that reason, the exceptions in § 207(e)(6) and (7) do not apply.

81. Absent a valid exception, the FLSA requires that such shift, weekend, and hourly premiums be included in the regular rate for a particular workweek when calculating overtime premiums, notwithstanding any statement to the contrary in the relevant CBA provisions. 29 U.S.C. § 207(e).

82. Defendant's employee paystubs show 2nd shift, 3rd shift, Saturday, and Sunday premiums each on their own line with their own pay codes, separate from the base hourly wage.

83. Payroll records presently available to Plaintiffs reflect that, for most of the FLSA Limitations Period and until in or around May 2026, Defendant paid

employees covered by the AFSCME CBAs shift premiums of only $0.75 per hour for second shift and $0.85 per hour for third shift, rather than the contractual rates of $0.90 and $1.05 per hour, respectively.

84. During the same period, Defendant also paid employees covered by the AFSCME CBAs weekend premiums of only $0.75 per hour for Saturday and $0.85 per hour for Sunday, rather than the contractual rates of $0.90 and $1.05 per hour, respectively.

85. The payroll records presently available to Plaintiffs further reflect that Defendant did not include even these incorrect shift and weekend premiums in the regular rate used to calculate overtime compensation.

86. In or around May 2026, Defendant began paying the correct contractual shift and weekend premium amounts to the AFSCME CBA-covered employees whose payroll records are presently available to Plaintiffs but continued to exclude those premiums from the regular rate used to calculate overtime compensation.

87. Plaintiffs Scott and Smith, both covered by the AFSCME Non-Supervisory CBA, were among the employees subjected to these practices.

88. Defendant's failure to pay the correct straight-time shift, weekend, and hourly premiums to employees also constitutes a breach of the applicable CBA and, as such, forms part of Plaintiffs' Rule 23 breach-of-contract claim asserted in

Count 5, even though such omitted straight-time rates may not be cognizable under the FLSA.

89. Given that the shift, weekend, and hourly premiums at issue in this Count are to be uniformly applied to employees through application of their shared CBA, Plaintiffs have reason to believe that Defendant's practice of excluding those premiums from the regular rate was not limited to AFSCME and GAA members.

90. Shift, weekend, and hourly premiums paid pursuant to the applicable CBAs constitute remuneration for employment and, absent an applicable statutory exclusion, must be included in the regular rate for workweeks in which an employee works more than forty hours.

91. By failing to include shift, weekend, and hourly premiums in the regular rate used to calculate overtime compensation, Defendant paid Plaintiffs and similarly situated employees less overtime compensation than required by 29 U.S.C. § 207(a)(1).

92. Plaintiffs and similarly situated employees were thereby injured by Defendant's failure to properly calculate and pay their overtime compensation.

93. Upon information and belief, Defendant has also failed to include contractually mandated payments for standby and on-call time in the regular rate for calculating overtime. When such hours are true standby/on-call time,

during which the employee is waiting to be engaged rather than engaged to wait, the compensation paid for them must be included in the regular rate although the hours do not count as hours worked (*i.e.*, the standby or on-call compensation belongs in the numerator when calculating the regular rate, but the nonworking standby or on-call hours are not to be included in the denominator). 29 C.F.R. § 778.223; *see* DOL opinion letter FLSA2008-6 (Sept. 22, 2008).

94. Defendant's failure to include standby and on-call payments in the regular rate has resulted in underpayment of legally required overtime premiums.

95. Plaintiffs and members of the Premium Collective are entitled to recover unpaid overtime compensation calculated to include the correct shift, weekend, and hourly premiums, as well as payments for on-call and standby time, in the regular rate, an equal amount as liquidated damages, and costs and reasonable attorney fees pursuant to 29 U.S.C. § 216(b).

**COUNT 3 – FLSA OVERTIME:**
**STALE WAGE RATE REGULAR-RATE VIOLATIONS**
***(On Behalf of Plaintiffs Scott and Smith and the Stale Rate Collective)***

96. Plaintiffs repeat and re-allege the previous numbered paragraphs as if fully restated herein.

97. This Count for unpaid overtime in violation of the FLSA is brought by Plaintiffs on their own behalf and on behalf of the putative Stale Rate Collective, defined as follows:

> All current and former non-exempt employees of Defendant covered by a Relevant CBA who, during the three years preceding the filing of this action, worked more than 40 hours in at least one workweek in which Defendant calculated their overtime compensation using a base wage rate that did not reflect a scheduled contractual wage increases.

98. The AFSCME CBAs establish base hourly wage rates for employees covered by these CBAs and provide for scheduled increases in such hourly rates.

99. Effective October 1, 2025, the AFSCME Non-Supervisory and Supervisory CBAs required an increase in the base hourly wage rates. **Exh. B**, § 34.02(C); **Exh. C**, § 34.03(C).

100. Defendant failed to timely implement the AFSCME October 1, 2025 contractual wage increase and continued to compensate employees covered by the AFSCME CBAs using their prior, lower base hourly wage rates.

101. Payroll records presently available to Plaintiffs demonstrate that Plaintiffs Scott and Smith, both employees covered by an AFSCME CBA, did not receive the October 1, 2025 contractual wage increase when it became effective. Discovery will be needed to reveal whether Defendant also failed

to timely implement any other contractual wage increases pursuant to any Relevant CBA.

102. During workweeks in which affected employees covered by an AFSCME CBA worked more than forty hours, Defendant calculated their overtime compensation using the stale, lower base wage rates rather than the wage rates then required by the CBA.

103. The FLSA's overtime requirement is not satisfied where an employer calculates overtime compensation based upon a deficient straight-time rate while failing to pay straight-time compensation due under the employee's employment contract. See 29 U.S.C. § 207(a)(1); 29 C.F.R. §§ 778.315, 778.317.

104. By calculating overtime compensation using stale base wage rates, Defendant failed to pay Plaintiffs and similarly situated employees the overtime compensation required by the FLSA.

105. Defendant's separate failure to pay the contractually required base wage rates for straight-time hours forms part of Plaintiffs' Rule 23 breach-of-contract claim asserted in Count 5.

106. Plaintiffs and similarly situated employees are entitled to recover unpaid overtime compensation resulting from Defendant's use of stale base

wage rates, an equal amount as liquidated damages, and costs and reasonable attorney fees pursuant to 29 U.S.C. § 216(b).

**COUNT 4 – FLSA OVERTIME:**
**NONDISCRETIONARY BONUS REGULAR-RATE VIOLATIONS**
***(On Behalf of Plaintiffs Scott, Smith, Robinson, and the Bonus Collective)***

107. Plaintiffs repeat and re-allege the previous numbered paragraphs as if fully restated herein.

108. This Count for unpaid overtime in violation of the FLSA is brought by Plaintiffs on their own behalf and on behalf of the putative Bonus Collective, defined as follows:

> All current and former non-exempt employees of Defendant covered by a Relevant CBA who, during the three years preceding the filing of this action, were entitled to an Annual Wage Bonus and/or Annual Performance Wage Bonus or other monetary bonus, whether paid as taxable income or remitted to a qualifying Health Savings Account, and who worked more than 40 hours in at least one workweek during the period to which the bonus related.

109. The AFSCME CBAs provide for two annual bonuses: an Annual Wage Bonus and an Annual Performance Wage Bonus. **Exh. B**, § 34.03, Sections A and B, pp. 81-83; **Exh. C**, § 34.03[7], Sections A and B, pp. 86-88. The GAA Unit 1 and Unit 2 CBAs (**Exhs. D & E**, § 35.02) provide for the same Annual

[7] Section 34.03 of the AFSCME Supervisory CBA appears to be misnumbered.

Wage Bonus and Annual Performance Wage Bonus at the same amounts and under the same conditions, as does the MBCTC CBA (**Exh. F**, § 41.02).

110. Section 34.03(A) of both AFSCME CBAs provides that "[a]nnual bonuses shall be paid to all County Employees represented by AFSCME…"" The CBA fixes the Annual Wage Bonus at $750 for employees with single-person healthcare contracts, $1,150 for employees with two-person healthcare contracts, and $1,500 for employees with family healthcare contracts. All bargaining-unit members are entitled to receive at least a $750 annual bonus regardless of participation in a healthcare contract. **Exhs. B & C**.

111. Employees may elect to receive the Annual Wage Bonus as taxable income or have it remitted by Defendant as pre-tax funds deposited into a qualifying Health Savings Account. The CBAs require the applicable bonus to be paid as a lump sum no later than February of each calendar year during the term of the Agreement, subject to specified provisions for new hires.

112. Payroll records presently available to Plaintiffs reflect payment of the Annual Wage Bonus under the pay code "BEN AWB Lump Sum."

113. Section 34.03(B) of each AFSCME CBA separately establishes an Annual Performance Wage Bonus. Beginning October 1, 2024, each employee in an AFSCME bargaining unit became eligible for a yearly wage

bonus based upon performance, with the first rating period running from October 1, 2024 through September 30, 2025.

114. Effective October 1, 2025, the AFSCME CBAs fix the Annual Performance Wage Bonus at $500 for an evaluation of Needs Improvement or its equivalent, $2,000 for Satisfactory or its equivalent, and $2,500 for Above Satisfactory or its equivalent. An employee receiving an Unsatisfactory evaluation or its equivalent receives no performance wage bonus.

115. Effective October 1, 2026, the AFSCME CBAs increase the Annual Performance Wage Bonus for a Satisfactory evaluation or its equivalent to $2,500 and for an Above Satisfactory evaluation or its equivalent to $3,000, while retaining the $500 bonus for Needs Improvement or its equivalent and no bonus for an Unsatisfactory evaluation or its equivalent.

116. Although Defendant participates in evaluating employee performance, the AFSCME CBAs establish in advance the performance period and the amount of the Annual Performance Wage Bonus corresponding to each resulting performance level.

117. The Annual Wage Bonus and Annual Performance Wage Bonus are therefore not bonuses for which both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of Defendant

at or near the end of the period to which the bonus relates. Accordingly, the exclusion in 29 U.S.C. § 207(e)(3)(A) does not apply.

118. Nor are these bonuses payments made pursuant to a bona fide profit-sharing plan, trust, thrift, or savings plan. The exclusion in 29 U.S.C. § 207(e)(3)(B) therefore does not apply.

119. Absent a statutory exclusion, these nondiscretionary bonus payments constitute remuneration that must be included in the regular rate for purposes of calculating overtime compensation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.209.

120. Where a bonus covers a period longer than a single workweek, the bonus must be apportioned back over the workweeks of the period during which it was earned, and additional overtime compensation must be paid for workweeks in which the employee worked more than forty hours. 29 C.F.R. § 778.209.

121. Based on the payroll records presently available to Plaintiffs, it appears that Defendant did not include the Annual Wage Bonus in calculating overtime compensation for employees covered by the AFSCME CBAs.

122. Plaintiffs' paystubs contain pay codes reflecting certain retroactive adjustments, including “PAY Overtime Retro Active” and “Pay Adjustment Overtime.” The paystubs do not disclose the basis or calculation of those

adjustments or establish that Defendant apportioned the Annual Wage Bonus or Annual Performance Wage Bonus over the periods in which they were earned and paid the resulting additional overtime compensation.

123. The precise manner in which Defendant allocated or accounted for these bonuses in calculating overtime compensation, if at all, is within Defendant's possession and control.

124. To the extent Defendant failed to include these nondiscretionary bonuses in employees' regular rates and pay the resulting additional overtime compensation for overtime workweeks, Defendant violated 29 U.S.C. § 207(a)(1).

125. Plaintiffs and similarly situated employees are entitled to recover any resulting unpaid overtime compensation, an equal amount as liquidated damages, and costs and reasonable attorney fees pursuant to 29 U.S.C. § 216(b).

**COUNT 5 – BREACH OF CONTRACT**
**On Behalf of Named Plaintiffs and the Wayne County Contract Class**

126. Plaintiffs repeat and re-allege the preceding paragraphs as if fully restated herein.

127. This Count is brought on behalf of Named Plaintiffs and all members of the Wayne County Contract Class ("Class"), defined as follows:

> All current and former employees of Defendant who, at any time during the six years preceding the filing of this action, were employed subject to any of the Relevant CBAs identified herein.

128. Defendant is a party to each of the Relevant CBAs identified above, which establish binding terms and conditions of compensation for Plaintiffs and members of the Class.

129. Plaintiffs and members of the Class performed work for Defendant and satisfied the applicable conditions for compensation required by their respective CBAs.

130. Defendant was contractually obligated to calculate and pay Plaintiffs and members of the Class in accordance with the wage rates, premiums, differentials, and other compensation provisions of the applicable CBAs.

131. As alleged above, Defendant centrally administered the pay practices and payroll platform through which contractually required compensation was calculated and paid to Plaintiffs and members of the Class.

132. The particular contractual compensation provisions applicable to members of the Class vary among the identified CBAs, and the particular compensation deficiencies affecting Class members may likewise vary. Plaintiffs anticipate that discovery will establish the appropriateness of subclasses corresponding to particular CBAs, compensation provisions, payroll practices, or categories of contractual underpayment.

133. Notwithstanding those differences, Plaintiffs and members of the Class were subject to Defendant's centralized administration of payroll and Defendant's obligation to calculate and pay compensation in accordance with the CBAs governing their employment.

134. Defendant breached its contractual obligations by failing to calculate and pay compensation in accordance with applicable CBA provisions.

135. The presently identified breaches described herein are not necessarily exhaustive. As alleged above, there is reason to believe that additional contractual compensation deficiencies may affect employees in other bargaining units, Locals, classifications, or job positions covered by the Relevant CBAs, the nature and extent of which will be further established through discovery.

136. Among other breaches, as alleged above, Sections 21.02 and 21.03 of the AFSCME CBAs require payment of specified shift and weekend premiums for qualifying work. Defendant breached those provisions by paying Plaintiffs Scott and Smith shift and weekend premiums at rates below those required by the CBA.

137. Section 34.02(C) of the AFSCME Non-Supervisory CBA and Section 34.03(C) of the AFSCME Supervisory CBA further provides that, effective October 1, 2025, covered employees "shall receive a one and one-half percent

(1.5%) increase to their base annual salary." Defendant breached that provision by failing to timely implement the contractual wage increase for Plaintiffs Scott and Smith and instead continuing to pay them based upon their prior, lower wage rates.

138. The precise nature and extent of Defendant's failure to calculate and pay compensation required by the applicable CBAs is reflected in payroll, timekeeping, personnel, and related records maintained and controlled by Defendant and will be further established through discovery.

139. As a direct and proximate result of Defendant's breaches, Plaintiffs and members of the Class have suffered damages consisting of compensation contractually due but unpaid, in amounts to be determined from Defendant's records and other evidence.

140. Plaintiffs and the Class are entitled to recover compensation contractually due but unpaid and all other relief available by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court provide the following relief:

A. Permit Plaintiffs and similarly situated employees who file written consents to proceed collectively pursuant to 29 U.S.C. § 216(b);

B. Order Defendant to produce, in Excel or a similar electronic format, the names and last known addresses, email addresses, and telephone numbers of all current and former employees falling within the FLSA Collective definitions pled herein during the applicable limitations period, and authorize Plaintiffs to disseminate court-authorized notice of this action and the opportunity to opt into it;

C. Appoint undersigned counsel as counsel for the FLSA Collectives and as Class Counsel for the Wayne County Contract Class and any subclasses the Court may certify;

D. Award Plaintiffs and members of the FLSA Collectives their unpaid overtime compensation under the FLSA;

E. Award Plaintiffs and members of the FLSA Collectives liquidated damages in an amount equal to their unpaid overtime compensation pursuant to the FLSA;

F. Apply the FLSA's three-year statute of limitations to Defendant's willful violations;

G. Certify the Wayne County Contract Class pursuant to Fed. R. Civ. P. 23(b)(3), together with such subclasses as the Court may determine appropriate;

H. Appoint the Named Plaintiffs as representatives of the Wayne County Contract Class and any appropriate subclasses;

I. Award Plaintiffs and members of the Wayne County Contract Class damages for compensation contractually due but unpaid under the applicable CBAs;

J. Award Plaintiffs reasonable attorneys' fees and costs as provided by law;

K. Award pre-judgment and post-judgment interest at the applicable rates; and

L. Grant such other legal or equitable relief as the Court deems just and appropriate.

**JURY DEMAND**

Plaintiffs demand a trial by jury for all eligible claims.

Dated: October 19, 2026

Respectfully submitted,

*/s/ Amy Marino*
Matt Clark (P76690)
Amy Marino (P76998)
GREGORY, MOORE, BROOKS,
CLARK & HELTON, P.C.
28 W. Adams Avenue, Suite 300
Detroit, Michigan 48226
(313) 964-5600
matt@unionlaw.net
amy@unionlaw.net

Raphael A. Katri (P86186)
LAW OFFICES OF
RAPHAEL A. KATRI, APC
8549 Wilshire Boulevard, Suite 200
Beverly Hills, California 90211-3104
(310) 940-2034
RKatri@katrilaw.com

*Attorneys for Plaintiffs and the Putative Class*